# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

FRANCO PERSECHINO and LINA TEIXEIRA,

Appellants,

v.

STATION SQUARE CONDOMINIUM ASSOCIATION, INC.,

Appellee.

No. 2D2025-2610

_____

August 14, 2026

Appeal pursuant to Fla. R. App. P. 9.130 from the County Court for Pinellas County; Susan Bedinghaus, Judge.

Lilliana M. Farinas-Sabogal of Becker & Poliakoff, P.A., Miami; and Steven H. Mezer of Becker & Poliakoff, P.A., Tampa (substituted as counsel of record), for Appellants.

Karen Cox of Appleton Reiss, PLLC, Tampa, for Appellee.

SLEET, Judge.

Franco Persechino and Lina Teixeira appeal from the trial court's nonfinal Order Granting Plaintiff's Emergency Motion for Temporary Injunction entered against them and in favor of Station Square Condominium Association, Inc.  We affirm.

Persechino and Teixeira own a condominium unit at Station Square and sought to install an electric vehicle (EV) charging station in their

assigned parking spots located in the limited common element parking garage of the condominium property. They submitted to the Association an application for the installation, but the Association denied it. The Association then developed its own application for installation of EV charging stations. Persechino and Teixeira submitted one but struck through certain questions on the application that they maintained were outside the statutory requirements for such an installation. The Association again denied the application, but Persechino and Teixeira nevertheless proceeded with the installation.

The Association then sought and obtained a temporary injunction. In the written order of injunction, the trial court found that Persechino and Teixeira made unauthorized material alterations to the Association's common element property and used the Association's breaker box and electricity, "limit[ing] the ability of use by unit owners and . . . requiring [Persechino and Teixeira to] access the Association's utilities/breaker box for any maintenance or repairs creating a liability and safety concern for the Association." The court further noted that Persechino and Teixeira's unauthorized EV charging station "was not separately metered and did not allow for [them] to be properly billed and to pay directly for electricity used."

The trial court ordered Persechino and Teixeira to stop using the charging station and allowed the Association to disconnect the station from its electrical supply. The temporary injunction also directed Persechino and Teixeira to submit an amended application "with all plans and specifications which is in compliance with the Association's EV Charger Installation Application Form, the Florida Statutes, and the Association's Governing Documents, including the Declaration, rules, and regulations."

On appeal, Persechino and Teixeira challenge this ruling, first arguing that it violates section 718.113(8), Florida Statutes (2025), which provides in part as follows:

[T]he installation of an electric vehicle charging station . . . shall be governed as follows:

(a) A declaration of condominium or restrictive covenant *may not prohibit or be enforced so as to prohibit* any unit owner from installing an electric vehicle charging station . . . within the boundaries of the unit owner's limited common element or exclusively designated parking area. The board of administration of a condominium association *may not prohibit* a unit owner from installing an electric vehicle charging station for an electric vehicle, as defined in s. 320.01, . . . within the boundaries of his or her limited common element or exclusively designated parking area. The installation of such charging . . . stations is *subject to the provisions of this subsection.*

(b) *The installation may not cause irreparable damage to the condominium property.*

(c) The electricity for the electric vehicle charging station . . . *must be separately metered or metered by an embedded meter and payable by the unit owner installing such charging or fuel station or by his or her successor.*

(Emphasis added.) Additionally, subsection (8)(h)1-5 sets forth what a condominium association "may require" a unit owner to do when installing an EV charging station, including complying with building codes and safety standards, complying with reasonable architectural standards adopted by the association, hiring a licensed and registered firm to perform the installation, providing a certificate of insurance, and reimbursing the association for any increase in its insurance premium attributable to the installation.

Persechino and Teixeira focus on these five requirements, arguing that they are the *only* limitations that the Association can legally impose on a unit owner's installation of an EV charging station. They maintain

3

that the Association's application required information and actions beyond these limitations.

We start with the plain language of the statute. *See Ham v. Portfolio Recovery Assocs.*, 308 So. 3d 942, 946 (Fla. 2020) ("In interpreting the statute, we follow the 'supremacy-of-text principle'— namely, the principle that '[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.' " (alteration in original) (quoting Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012))). Section 718.113(8)(a) states that an association "may not *prohibit*" the installation of an EV charging station. (Emphasis added.) Contrary to Persechino and Teixera's argument on appeal, the statute does not say that an association cannot put limits or requirements on that installation, and the statute itself includes limits beyond those found in subsection (8)(h)1-5. Subsection (8)(b) limits the means of the installation to methods that will not "cause irreparable damage to the condominium property," and subsection (8)(c) requires the installation to include a separate electricity meter "payable by the unit owner." Additionally, subsection (8)(h) does not include any language indicating that its list of permissive requirements is an exhaustive list. *See Peace River/Manasota Reg'l Water Supply Auth. v. IMC Phosphates Co.*, 18 So. 3d 1079, 1087 (Fla. 2d DCA 2009) ("[T]his court is not permitted to add words to a statute that were not placed there by the legislature." (citing *Hayes v. State*, 750 So. 2d 1, 4 (Fla. 1999))).

Furthermore, "[r]elated statutory provisions must be read together to achieve a consistent whole, and . . . '[w]here possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another.' " *Edwards v. Thomas*, 229 So.

4

3d 277, 284 (Fla. 2017) (second alteration in original) (quoting *Quarantello v. Leroy*, 977 So. 2d 648, 652 (Fla. 5th DCA 2008)). We must also remember that "the [l]egislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless." *Id.* (quoting *Quarantello*, 977 So. 2d at 652). Accordingly, we must read section 718.113(8) in conjunction with the rest of chapter 718 in a way that gives meaning to all parts, including section 718.113(2)(a), which provides:

> [T]here shall be no material alteration or substantial additions to the common elements or to real property which is association property, except in a manner provided in the declaration as originally recorded or as amended under the procedures provided therein. If the declaration as originally recorded or as amended under the procedures provided therein does not specify the procedure for approval of material alterations or substantial additions, *[seventy-five] percent of the total voting interests of the association must approve the alterations or additions before the material alterations or substantial additions are commenced.*

(Emphasis added.)[1]

We cannot read section 718.113(8)(h) to mean that EV charging stations installed by condominium unit owners can never amount to "material alteration or substantial additions" under subsection (2)(a). This conclusion is supported by subsection (9) of the statute, which allows "[t]he board of administration of an association [to] make available, install, or operate an [EV] charging station" on association or common elements property and specifically states that "the installation, repair, or maintenance of an [EV] charging station . . . *under this subsection* does not constitute a material alteration or substantial

---

[1] Section 9 of the Association's condominium declaration includes a provision similar to the statutory provision requiring authorization by seventy-five-percent vote.

addition to the common elements or association property." § 718.113(9) (emphasis added). No such similar language is included in subsection (8) pertaining to EV charging station installation by condominium unit owners. "[W]hen the [l]egislature 'has included a specific provision in one part of a statute and omitted it in another part' courts are instructed to presume that the [l]egislature 'knows how to say what it means' and that the differentiation in the language 'is intentional.' " *Storey Mountain, LLC v. George*, 357 So. 3d 709, 714 (Fla. 4th DCA 2023) (quoting *Paragon Health Servs., Inc. v. Cent. Palm Beach Mental Health Ctr., Inc.*, 859 So. 2d 1233, 1235 (Fla. 4th DCA 2003)). Accordingly, we must conclude that the legislature intends that although installation by an association of an EV charging station cannot constitute material alteration or substantial addition, installation by a unit owner of an EV charging station may amount to such.

Accordingly, reading all subsections of the statute in harmony together in a way that renders no part meaningless, *see Edwards*, 229 So. 3d at 284, if a party can establish through evidence that a unit owner's proposed installation of an EV charging station materially alters or substantially adds to the common elements of association property, the installation is subject to the approval requirements of section 718.113(2)(a).

Here, the Association board president testified below that without authorization, Persechino and Teixeira connected a Tesla EV charging station to a common element wall in the condominium's parking garage, ran approximately 145 feet of electrical conduit from the charging station to the Association's electrical box, made holes in the locked electrical box to gain access to it, and drilled screws into the garage wall and ceiling to attach the conduit. At no time has Persechino, Teixeira, or their

6

electrician informed the Association of exactly what electrical work was performed in the common area, what electrical materials were used to connect the charging station to the box, what type of screws were used to attach the conduit, the location or depth of the holes drilled into the garage ceiling to run the conduit, or how the Association's electrical box was used or altered. Although Persechino and Teixeira attached a meter to their charging station, the Association has no information about the meter or what it is measuring. Persechino and Teixeira argue that the meter will allow the Association to determine what they should pay monthly as reimbursement on the Association's electricity bill, but the board president testified that a large percentage of that bill is taxes and fees and that there is no way for the Association to determine what portion of those would be attributable to the charging station.

This evidence supports the trial court's conclusion that Persechino and Teixeira's EV charging station installation qualified as "material alteration or substantial addition" under section 718.113(2)(a). It therefore required, pursuant to the statute and the Association's condominium declaration, seventy-five percent of the Association's voting interests to approve the project prior to its commencement. By moving ahead with the installation before resolving the application dispute or seeking approval of at least seventy-five percent of the other unit owners, Persechino and Teixeira violated the provisions of both the statute and the condominium declaration.

Accordingly, the trial court did not err in entering the temporary injunction. "A temporary injunction . . . should be granted only when the party seeking the injunction has established four elements: (1) a substantial likelihood of success on the merits, (2) the unavailability of an adequate remedy at law, (3) irreparable harm absent entry of an

7

injunction, and (4) that the injunction would serve the public interest." *Fla. Dep't of Health v. Florigrown, LLC*, 317 So. 3d 1101, 1110 (Fla. 2021).

Here, Persechino and Teixeira's violating both the statute and the condominium declaration along with their altering of the Association's common element property to an unknown extent without any input from the Association establishes both a likelihood that the Association will be successful on the merits and that it is without an adequate remedy at law. *Cf. Amelio v. Marylin Pines Unit II Condo. Ass'n*, 173 So. 3d 1037, 1040 (Fla. 2d DCA 2015) ("If monetary damages would fully compensate a loss, then [the adequate remedy] element is not established."). Furthermore, "[a] violation of the requirements of chapter 718 is itself a harm for which section 718.303 authorizes injunctive relief. The statute requires no additional showing of harm." *Hobbs v. Weinkauf*, 940 So. 2d 1151, 1153 (Fla. 2d DCA 2006); *see also* § 718.303(1). Finally, requiring compliance with statutory requirements is in the public interest.

Accordingly, the trial court did not err in entering its Order Granting Plaintiff's Emergency Motion for Temporary Injunction.

Affirmed.

VILLANTI and BLACK, JJ., Concur.

_____

Opinion subject to revision prior to official publication.